UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON THOMPSON and MARK A. HAYDEN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>K.R. DENTH TRUCKING, INC., THOMAS J. MANZKE, KENNETH S. DRENTH, STEVEN RUCKERT, JOHN MCGEE and KENNETH ANDRESEN<br><br>Defendants. | Collective Action<br><br>Case No. 1:10-cv-0135-TWP-MJD |

## ENTRY ON PLAINTIFFS' MOTION FOR CERTIFICATION AND NOTICE OF COLLECTIVE ACTION LAWSUIT

This matter is before the Court on a Motion for Certification and Notice of Collective Action brought by Jason Thompson ("Thompson") and Mark Hayden ("Hayden"), on behalf of themselves and similarly situated truck drivers (collectively, "Plaintiffs"). This proposed collective action seeks to recover damages on behalf of present and former truck drivers employed by Defendant K.R. Denth Trucking, Inc. ("KRD"). Specifically, Plaintiffs allege that KRD, Thomas Manzke, Kenneth Drenth, Steven Ruckert, John McGee, and Kenneth Andresen (collectively referred to as "Defendants") violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime premiums for hours worked over 40 in a workweek. For the reasons set forth below, Plaintiffs' Motion for Certification and Notice of Collective Action [Dkt. 19] is **DENIED**.

# I. BACKGROUND

Pursuant to Plaintiffs' reply brief [Dkt. 40],[1] Plaintiffs seek preliminary certification of the following collective action:

> All present and former <u>Non-Recyclable Drivers</u> employed by [KRD] and any subsidiary that has worked over 40 hours in a workweek on or after January 18, 2007.

(emphasis added).

## A.     KRD's Operations

KRD provides hauling, disposal, and heavy equipment services to customers in, among other states, Indiana, Kentucky, Nevada, Michigan, North Carolina, Georgia, Tennessee, Mississippi, Missouri, Ohio, and South Carolina. All of KRD's drivers are equally qualified and capable of carrying *any* type of load (recyclable or non-recyclable) to *any* destination (in-state or out-of-state). As KRD notes, "[a]ny KRD Trucking driver could be called upon at any time to carry any load, whether intrastate or interstate." That said, most of KRD's operations involve transporting non-recyclable material within state lines. However, approximately 25 to 30 percent of KRD's operations involve transporting either recyclable or non-recyclable materials interstate. KRD also transports recyclable materials intrastate that are ultimately destined for out-of-state purchasers. Finally, KRD regularly bids on jobs requiring interstate travel.

## B.     David Wilbur's Affidavit

Plaintiffs point to an affidavit from former KRD employee David Wilbur ("<u>Wilbur</u>") to

---

[1]Initially, Plaintiffs sought certification of a collective action consisting of "intrastate truck drivers," not "Non-Recyclable Drivers." Plaintiffs used their reply brief to modify the proposed collective action, perhaps a tacit acknowledgment that a class of "intrastate drivers" was particularly susceptible to attack.

shore up their contentions regarding KRD's employment practices. Wilbur, who was initially hired as a truck driver in 2003, was promoted to dispatcher/driver manager of the Indianapolis terminal in October 2007. In that capacity, his duties encompassed assigning Indianapolis drivers work and dealing with payroll issues. In his affidavit, Wilbur confirmed that KRD paid its truck drivers flat fees by the load – not hourly wages – in its Indianapolis, Chicago, Champaign, and Cincinnati locations.

Wilbur further confirmed that KRD employs two distinct classes of truck drivers: (1) Recyclable Drivers and (2) Non-Recyclable Drivers. As their monikers suggest, Recyclable Drivers typically transport recyclable materials, whereas Non-Recyclable Drivers typically transport non-recyclable materials. But this is not always the case. Wilbur concedes this point, stating "[i]f and when a Non-Recyclable Driver is/was asked to haul recyclable garbage, the Non-Recyclable Driver would . . . perform these duties on a temporary basis due to the unavailability of a Recyclable Driver." According to Wilbur, KRD employed many more Non-Recyclable Drivers than Recyclable Drivers. Indeed, "Between October 16, 2007 and January 2010, KRD had only one or two Recyclable Drivers out of 35 to 50 drivers at any given time."

**C.      Thompson & Hayden – The Proposed Class Representatives**

Thompson and Hayden worked as Non-Recyclable Drivers for KRD. Thompson worked out of KRD's Indianapolis terminal from March 1, 2009 to October 9, 2009, primarily hauling non-recyclable materials collected from Indianapolis and Bloomington to Terre Haute. Similarly, Hayden worked out of the Indianapolis terminal – having the same general duties and routes as Thompson – from October 15, 2007 until October 19, 2009. Thompson and Hayden

3

did not *always* work within Indiana's state lines, however. On one occasion, both Thompson and Hayden crossed Indiana boundaries to transport KRD equipment to South Carolina. Moreover, on a handful of occasions, Thompson and Hayden hauled recyclable garbage destined for purchasers across state lines.

KRD paid Thompson and Hayden a flat rate per load, determined by fees associated with the particular hauling routes traveled. By way of example, KRD paid Hayden $67.00 per load for trips from Indianapolis to Terre Haute. KRD never paid Thompson or Hayden an hourly rate and, significant to this dispute, never paid overtime premiums for hours worked over 40 in a workweek. Plaintiffs allege that, as a result, Thompson, Hayden, and their similarly situated cohorts are entitled to overtime pay at a rate of one and one-half times their regular rate of pay for all hours work in excess of 40 per week.

## II. LEGAL STANDARD

The present motion is similar in nature to a garden-variety motion for class certification governed by Fed. R. Civ. P. 23. "The FLSA provides a mechanism, similar to a class action but more commonly referred to as a 'collective action,' that permits the joining of similarly situated employees in a single lawsuit." *Fravel v. County of Lake*, 2008 WL 2704744, at *2 (N.D. Ind. July 7, 2008) (citing *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004)). The chief difference between a Rule 23 class action and a collective action under the FLSA is that a collective action is comprised of "opt-in" plaintiffs, whereas the Rule 23 class action is comprised of "opt-out" plaintiffs. *Id*. (citing 29 U.S.C. § 216(b)). The FLSA states that a cause of action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id*. (quoting 29 U.S.C. § 216(b)). However,

4

the FLSA does not define precisely what constitutes a "similarly situated" employee. *Id*.

Most courts apply a two-step inquiry when faced with a collective action under the FLSA. The first step, often referred to as the "notice stage" or "conditional certification," only requires plaintiff to make a threshold, minimal showing that the potential plaintiffs are similarly situated. *Id*. (collecting cases); *see also Fedex Ground Package Sys., Inc., Employment Practices Litigation*, 662 F. Supp. 2d 1069, 1081 (N.D. Ind. 2009) (plaintiffs must "demonstrate a reasonable basis for believing that they are similarly situated to potential class members."). This step is based upon only the pleadings and affidavits. *Fravel*, 2008 WL 2704744, at *2 (citing *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003)). Further, "[b]ecause this step occurs early in a case, the court accepts as true the plaintiff's allegations and does not reach the merits of plaintiff's FLSA claims." *Id*. (citations omitted). Although plaintiff's burden is "lenient" at this early stage, courts have warned that mere allegations in the complaint, without more, will not suffice. *Id*. at *3 (citations omitted). In the second inquiry, made at the close of discovery, the Court assesses whether the plaintiffs who opted into the lawsuit are actually similarly situated to the representative plaintiffs. *Boyd v. Jupiter Aluminum Corp.*, 2006 WL 1518987, at *3 (N.D. Ind. May 31, 2006) (citations omitted). Given that the present motion is only for conditional certification, the Court need not venture past step one. *Id*.

## III.  DISCUSSION

### A.  The FLSA & Motor Carrier Act Exemption

The FLSA requires employers to pay overtime of at least one and one-half times an employee's regular rate of pay. 29 U.S.C. § 207(a)(1). This requirement is not limitless,

5

however. The FLSA specifically exempts a wide range of employees from overtime eligibility. For instance, the Motor Carrier Act exemption ("MCA exemption"), which lies at the heart of the present dispute, specifically exempts from overtime pay any employee over "whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." 29 U.S.C. § 213(b)(1). As fleshed out by the regulations, the MCA exemption applies to employees who:

> Are employed by carriers whose transportation of ... property by motor vehicle is subject to [the Secretary's] jurisdiction under section 204 of the Motor Carrier Act ..., and . . . engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of ... property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F. R. § 782.2. To clarify, an employee is subject to the MCA exemption if he or she meets three requirements. That is, he or she must be: (1) employed with a carrier subject to the power of the Secretary of Transportation; (2) engaged in activities directly affecting the operational safety of motor vehicles; and (3) engaged in *interstate* commerce. FLSA exemptions "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

**B.     Application of the MCA Exemption**

The main thrust of KRD's argument is that the MCA exemption applies to Thompson and Hayden, rendering them ineligible for overtime pay and unsuitable collective action representatives. Plaintiffs, of course, vehemently disagree. To determine the applicability of the MCA exemption, it is necessary to analyze each of its requirements separately.

Plaintiffs do not seriously dispute requirements (1) and (2) of the MCA Exemption. With

respect to requirement (1), the Secretary of Transportation has jurisdiction to establish qualifications and maximum hours of service over "motor carriers." *See* 49 U.S.C. § 31502(b)(1),(2). KRD qualifies as a "motor carrier" because it transports commodities in interstate commerce for compensation. *See* 49 U.S.C. § 13102(14) (a "motor carrier" means "a person providing motor vehicle transportation for compensation."). Requirement (2) is met because truck drivers, like Thompson and Hayden, directly affect the operational safety of motor vehicles. *Songer v. Dillon Resources, Inc.*, 636 F. Supp. 2d 516, 523 (N.D. Tex. 2009) (citing *Levinson v. Spector Motor Service*, 330 U.S. 649, 666-68 (1947)).

Unlike (1) and (2), requirement (3) – whether Thompson and Hayden engaged in *interstate commerce* – is hotly contested. To meet this requirement, a driver need not make interstate trips with regularity. Rather, "the pertinent inquiry is whether the driver in question 'is, or could be, called upon to transport a shipment in interstate commerce.'" *Craft v. Ray's*, 2009 WL 3163148, at * 4 (S.D. Ind. Sept. 29, 2009) (emphasis added) (quoting 46 Fed. Reg. 37,902 (July 23, 1981)); *see also Morris v. McComb*, 332 U.S. 422 (1947) (class of drivers covered by MCA exemption, even though interstate hauling of freight comprised only *four percent* of employer's total business); *Brennan v. Cardinal Industries, Inc.*, 1976 WL 1720, at *6 (S.D. Ohio Mar. 8, 1976) ("This Court is of the opinion that, despite the fact that during the two year audit period in question less than *one percent* of the trips made by defendant's truck drivers were in interstate transportation, those trips were sufficient to give to the Secretary of Transportation the power to regulate the drivers of those trips"; exemption applied). For that matter, a driver need not actually cross state lines to engage in interstate commerce. "Transportation of goods within a single state is interstate in character where it forms part of a

7

'practical continuity of movement' across state lines from the point of origin to the point of destination." *Craft*, 2009 WL 3163148, at * 4 (citing *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)); *see also Collins v. Heritage Wine Cellars*, 589 F.3d 895 (7th Cir. 2009) (MCA exemption applied to truck drivers, even though they never crossed Illinois' state lines, because wine was transported from other states and countries).

Clearly, the touchstone of the interstate commerce requirement is the *nature* of the employee's work, not the actual *percentage* of time spent traveling interstate. Finally, the Notice of Interpretation issued by the DOT regarding the MCA exemption sheds further light on the distinction, providing that the exemption will apply to a driver who could reasonably be expected to make an interstate run, even if he has not yet done so:

> If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver *could reasonably have been expected to make one of the carrier's interstate runs*.

Notice of Interpretation of the Department of Transportation, Federal Highway Administration, 46 Fed. Reg. 37902, 37903, 1981 WL 115508.

Plaintiffs make three separate arguments to counter the position that the MCA exemption bars Thompson and Hayden from recovering overtime pay and, by extension, representing the proposed collective action. First, Plaintiffs contend that at this early stage, assessing the applicability of the MCA exemption would be premature. Second, because Thompson and Hayden are Non-Recyclable drivers who only left Indiana or hauled recyclable garbage on a few *de minimis* occasions, they "clearly do not fall within the MCA exemption." In other words, Plaintiffs argue that the exemption should not apply based on a handful of anomalies. Third, Plaintiffs highlight a case from the Northern District of Illinois, suggesting that the hauling of

8

non-recyclable material is not governed by the MCA. *See Alice v. GCS, Inc.*, 2006 WL 2644958, at *3 (N.D. Ill. Sept. 14, 2006) ("Therefore, the non-hazardous, non-recyclable waste that Alice transports . . . likely does not qualify as property under the MCSA."). Because Thompson and Hayden spent the lion's share of their time hauling non-recyclable material, Plaintiffs reason, the MCA exemption cannot apply.

As an initial matter, the Court is not persuaded by Plaintiffs' contention that this inquiry is premature. Indeed, courts have refused to conditionally certify a collective action under analogous circumstances. Most notably, in *Fedex Litigation*, cited above, the Northern District of Indiana refused to certify a class because an MCA exemption applied to named plaintiffs, rendering them inadequate class representatives. 662 F. Supp. 2d at 1082. Other courts within the Seventh Circuit have refused to conditionally certify a collective action where the determination of the claims of potential class members required an individualized analysis of duties. *See, e.g., Clausman v. Nortel Networks, Inc.*, 2003 WL 21314065 (S.D. Ind. May 1, 2003). If the MCA exemption applies to Thompson and Hayden, they would be unable to represent the entire proposed class in an adequate fashion. For this reason, delving into the applicability of this exemption is not premature.

Plaintiffs' substantive arguments present more taxing questions but, in the end, are also unavailing. That is, the Court respectfully disagrees with Plaintiffs' contention that the MCA exemption cannot apply because Thompson and Hayden only traveled out-of-state once and typically hauled non-recyclable materials. To reiterate, the crucial question is whether the driver in question is, <u>or could be</u>, called upon to transport a shipment in interstate commerce. *Craft*, 2009 WL 3163148, at * 4   Here, KRD has presented evidence that it regularly bid on jobs

9

requiring interstate travel and that all of its drivers are equally qualified and capable of carrying any type of load interstate or intrastate. What is more, KRD has presented evidence establishing that any of its truck drivers could be called upon at any time to carry any load, whether intrastate or interstate.

While Thompson and Hayden rarely crossed state lines, they could have been called upon to do so from time to time in the regular course of their work, as evidenced by the fact that they each made one trip to South Carolina during their relatively short tenures with KRD. It is well-established that since "the Supreme Court's sensible decision in *Morris v. McComb*," an "employer of a driver who may *sometimes* be required to deliver goods in interstate commerce is subject to the [MCA] even if most of his driving is intrastate." *Collins*, 589 F.3d at 901 (emphasis added); *see also Songer*, 636 F. Supp. 2d at 526 (granting summary judgment due to applicability of MCA exemption, even though 13 of the 21 plaintiffs had never actually traveled across state lines; emphasizing that drivers were still qualified to travel interstate); *Vidinliev v. Carey International, Inc.*, 2009 WL 2848344, at *2-3 (N.D. Ga. Aug. 31, 2009) (granting summary judgment based on MCA exemption partially because chauffeurs, even those who have never traveled out-of-state and who have expressed preferences to only travel in-state, "may end up driving out of state because of a client's request"). In finding that defendants made their required showing of interstate transportation, the *Vidinliev* court specifically highlighted the defendant's declaration that "[a]ny driver, including the Plaintiffs, could have been called upon to drive a commercial vehicle across state lines or otherwise, at any time." *Id*. at *2. KRD has made this same showing. Because the MCA exemption applies, Thompson and Hayden are inadequate representatives for the proposed collective action.

Finally, Plaintiffs' argument that non-recyclable material is not subject to the MCA as a matter of law, while certainly well-taken, misses the mark. Assuming *arguendo* that Plaintiff's contention is settled law, which it is not, this would not alter the Court's conclusion. Again, *any* of KRD's drivers could be called upon at *any* time to transport *any* type of load – recyclable or non-recyclable. Indeed, Thompson and Hayden both hauled recyclable materials destined for out-of-state purchasers on a handful of occasions.[2] Moreover, Wilbur's affidavit concedes that Non-Recyclable Drivers may called upon to fill in for an unavailable Recyclable Driver. As a practical matter, this must be true, given that KRD employs considerably more Non-Recyclable Drivers. Wilbur's affidavit noted that "[b]etween October 16, 2007 and January 2010, KRD had only one or two Recyclable Drivers out of 35 to 50 drivers at any given time." If a Recyclable Driver called in sick, a Non-Recyclable Driver invariably filled his shoes. And even if a particular Non-Recyclable Driver had never actually filled in, he could reasonably expect to be called upon to do so, given the stark disparity in numbers.

Plaintiffs are free to pursue their individual claims, however, plaintiffs have failed to assert facts upon which this Court can grant conditional certification of the proposed class in this case.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Certification and Notice of Collective Action [Dkt. 19] is **DENIED**.

---

[2] It is worth noting that Plaintiffs failed to counter KRD's assertion that Thompson, Hayden, and other Indiana drivers carried certain recyclable materials within the flow of interstate commerce, potentially providing another avenue for applying the MCA exemption. Given the Court's ruling, it need not address this issue in detail. Suffice to say, this fact only reinforces the Court's ruling.

SO ORDERED: 02/11/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**Emmanuel V.R. Boulukos**
ICE MILLER LLP
emmanuel.boulukos@icemiller.com,deborah.smith@icemiller.com

**David J. Carr**
ICE MILLER LLP
carr@icemiller.com,ross@icemiller.com

**Paul Conrad Sweeney**
ICE MILLER LLP
paul.sweeney@icemiller.com,mary.unger@icemiller.com

**Stephen E. Vander Woude**
LANTING PAARLBERG & ASSOCIATES
svanderwoude@lantingpaarlberg.com,svanderwoude@lpalawltd.com

**Ronald E. Weldy**
WELDY & ASSOCIATES
weldy@weldylaw.com