UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON THOMPSON, MARK A. HAYDEN )<br>On Behalf of Themselves and all Others similarly )<br>Situated, WILLIAM E. BARNES, and )<br>DALE C. DAVIS, )<br>   )<br>   Plaintiff, )<br>   )<br>   v. )<br>   )<br>K.R. DRENTH TRUCKING, INC., THOMAS J. )<br>MANZKE, KENNETH S. DRENTH, STEVEN )<br>RUCKERT, JOHN McGEE, and KENNETH )<br>ANDRESEN, )<br>   )<br>   Defendants. ) | Case No. 1:10-cv-00135-TWP-DKL |

## ENTRY ON PLAINTIFFS' MOTION TO RECONSIDER

This disputes arises out of allegations that Defendants (collectively, "KRD") violated the Fair Labor Standards Act ("FLSA") by failing to pay a certain group of truck drivers ("Plaintiffs") overtime premiums. Plaintiffs sought conditional certification of the following proposed collective action:

> All present and former <u>Non-Recyclable Drivers</u> employed by [KRD] and any subsidiary that has worked over 40 hours in a workweek on or after January 18, 2007.

(Dkt. 70 at 1; emphasis added). On February 11, 2011, the Court denied Plaintiffs' Motion. In doing so, the Court held that the Motor Carrier Act exemption applied to named Plaintiffs, Jason Thompson ("Thompson") and Mark Hayden ("Hayden"), thus rendering them ineligible for overtime pay and unsuitable collective action representatives. Plaintiffs have now asked the Court to reconsider its ruling.

"A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation and quotations omitted). In support of their Motion, Plaintiffs contend that a disputed issue of material fact exists, precluding a finding that the Motor Carrier Act exemption applies to Thompson and Hayden. Having reviewed the parties' latest round of briefing, the Court is now persuaded that it may have "jumped the gun" and prematurely probed too deeply into the merits at the early conditional certification stage.

**A.     The Motor Carrier Act exemption**

While the Court need not exhaustively rehash the factual backdrop and the basic legal standards at this time, some background is instructive. The FLSA requires employers to pay overtime of at least one and one-half times an employee's regular rate of pay. 29 U.S.C. § 207(a)(1). This requirement is not limitless, however. The FLSA specifically exempts a wide range of employees from overtime eligibility. For instance, the Motor Carrier Act exemption ("MCA exemption"), which lies at the heart of the present dispute, specifically exempts from overtime pay any employee over "whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." 29 U.S.C. § 213(b)(1). An employee is subject to the MCA exemption if he or she meets three requirements. The employee must be: (1) employed with a carrier subject to the power of the Secretary of Transportation; (2) engaged in activities directly affecting the operational safety of motor vehicles; and (3) engaged in *interstate* commerce. *See* 29 C.F.R. § 782.2. For purposes

of the Motion to Reconsider, the parties' dispute centers squarely on the *interstate* commerce requirement.

In the February 11, 2011 Entry (Dkt. 68), this Court acknowledged that the issue of whether Thompson and Hayden engaged in *interstate commerce* was "hotly contested." Plaintiffs emphasized that both Thompson and Hayden were Non-Recyclable Drivers who regularly transported non-recyclable materials within the State of Indiana. Plaintiffs argued that since they never engaged in interstate commerce as part of their "regular" or "normal" duties, Thompson and Hayden are suitable collective action representatives. KRD counters that *any* of its drivers, including Thompson and Hayden, "could be called upon at any time to carry any load, whether intrastate or interstate," meaning the MCA exemption applies. (Dkt. 71 at 4). And, indeed, Thompson and Hayden each crossed Indiana state lines on one occasion to transport KRD equipment to South Carolina.

In its prior entry, the Court found KRD's argument persuasive, determining that the MCA exemption applied to Thompson and Hayden. In other words, even if Thompson and Hayden rarely crossed state lines (or, for that matter, hauled recyclable material destined for out-of-state purchasers), they could have been called upon to do so in their regular course of work. For this reason, the Court denied Plaintiffs' motion for conditional certification.

Having now reviewed a more thorough body of case law, the Court finds that it erred by, in effect, making a merits determination at this early stage. As Plaintiffs emphasize, they have a "lenient" burden at this stage of the proceedings and, as such, courts do not reach the merits of Plaintiffs' FLSA claims. *Fravel v. County of Lake*, 2008 WL 2704744, at *2 (N.D. Ind. July 7, 2008) (citations omitted). However, it is worth noting that even at this early stage, a court must also ensure that the proposed class representatives are adequate.

For instance, in *In re Fedex Ground Package Sys., Inc., Employment Practices Litigation*, 662 F. Supp. 2d 1069 (N.D. Ind. 2009), the Northern District of Indiana refused to certify a class because the MCA exemption applied to named plaintiffs, rendering them inadequate class representatives. *Id.* at 1082. Moreover, the Seventh Circuit has recognized that "[b]efore deciding whether to allow a case to proceed as a class action…a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).[1] Plainly stated, if the law was overwhelmingly obvious that the MCA exemption applied to Thompson and Hayden – therefore rendering them inadequate collective action representatives – the Court would feel comfortable denying certification, notwithstanding the procedural posture of this case.

The law, however, is not so clear-cut. Courts have seemingly taken divergent positions when determining the applicability of the MCA exemption. For instance, some courts have effectively embraced a more bright-line rule that if a driver merely *could be* called upon to cross state lines, then the MCA exemption bars overtime pay. The Court heavily relied on these cases in its previous Entry denying conditional certification. *See, e.g., Craft v. Ray's*, 2009 WL 3163148, at * 4 (S.D. Ind. Sept. 29, 2009) ("the pertinent inquiry is whether the driver in question 'is, or could be, called upon to transport a shipment in interstate commerce.'"); *Songer v. Dillon Resources, Inc.*, 636 F. Supp. 2d 516, 524-27 (N.D. Tex. 2009), *aff'd* 618 F.3d 467 (5th Cir. 2010) (granting summary judgment due to applicability of MCA exemption; even though 13 of the 21 plaintiffs had never actually traveled across state lines, MCA exemption applied because drivers could "reasonably have been expected" to make an interstate run); *Vidinliev v.*

---

[1] While Rule 23 does not govern FLSA collective actions, the Court believes this principle still holds true under the circumstances. As the *In re Fedex* court noted, "Although the requirements of Rule 23 generally don't apply to certification of an FLSA collective action, inadequacy of representation is nevertheless an equitable consideration at issue in determining whether to certify a putative class." 662 F. Supp. 2d at 1081-82.

*Carey International, Inc.*, 2009 WL 2848344, at *2-3 (N.D. Ga. Aug. 31, 2009) (granting summary judgment based on MCA exemption partially because chauffeurs, even those who have never traveled out-of-state and who have expressed preferences to only travel in-state, "may end up driving out of state because of a client's request"); *see also* 29 C.F.R. § 782.2(b)(3) (general rule is that "if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers…that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2)…he comes within the exemption in all workweeks when he is employed at such job.").

Other courts have embraced an arguably more nuanced approach, under which the plaintiff's "normal" or "regular" duties are paramount in determining the applicability of the MCA exemption. *See, e.g., Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 275 (S.D.N.Y. 2008) (denying summary judgment with respect to FLSA claims; "Thus, for the motor carrier exemption from the FLSA to apply, defendants here must establish either that the activities of the individual plaintiffs involved interstate travel of a character that was more than *de minimis* or that interstate travel was a 'natural, integral and...inseparable part' of the position plaintiffs held."); *Dole v. Circle "A" Construction, Inc.*, 738 F. Supp. 1313, 1322 (D. Idaho 1990) ("a driver is not exempt under the [MCA] merely because he takes one or two interstate trips."); *see also* 29 C.F.R. § 782.2(b)(3) ("where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be *de minimis*, the exemption will not apply to him in any workweek…"). Moreover, it is worth noting that FLSA exemptions "are to be narrowly construed against the employers seeking to assert them and their application limited to

those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).[2]

Ostensibly, there is some tension in the case law – and perhaps even in the regulations themselves. Given this backdrop, the Court is reticent to pierce into the merits, as this case is in its relative infancy. Along those same lines, the Court believes that its previous entry was premature. Plaintiffs argue that "[t]o the extent Thompson, Hayden or any other Non-Recyclable Driver did haul recyclable garbage either in intrastate or interstate commerce, these duties would be only temporary and sporadic and would not constitute their **regular duties**." (Dkt. 70 at 6; emphasis in original). The Court finds that this argument carries Plaintiffs past the conditional certification stage. Simply stated, the Court should not rule on the merits of this case until it has a more complete picture of the *nature and character* of Plaintiffs' duties.

KRD argues that a decision granting conditional certification would turn the Supreme Court's decision in *Morris v. McComb*, 332 U.S. 422 (1947) on its head. The Court, however, is not convinced. In *McComb*, the Supreme Court held that a class of drivers was covered by the MCA exemption, even though interstate trips comprised only *four percent* of the employer's total business. But in doing so, the Court deemed it significant that the interstate trips were "shared indiscriminately by the drivers," making these trips a "natural, integral, and apparently inseparable part" of the driver's duties. *Id*. at 433. Here, if trips of an interstate character were not distributed *indiscriminately*, this would potentially render *McComb* distinguishable. For this reason, *McComb* is not dispositive, at least not in the conditional certification stage. Upon a more thorough examination, the Court is persuaded that KRD's MCA exemption argument cannot carry the day.

---

[2] In the Court's view, it is also significant that these rulings were made at the summary judgment stage – not at the conditional certification stage.

**B. KRD's remaining arguments**

KRD also argues that a collective action should not be conditionally certified because the proposed class members' claims require an individualized analysis, thus rendering conditional certification improper. In a similar vein, KRD contends that the facts alleged fail to support a finding that the proposed collective action members stand as similarly situated. Specifically, "conditional certification would force the Court to engage in a driver-by-driver analysis of duties, thereby undermining any efficiencies gained via the collective action." (Dkt. 55 at 8.)

Courts apply a two-step inquiry when faced with a collective action under the FLSA. The first step, where this case currently sits, is often referred to as the "notice stage" or "conditional certification." It only requires plaintiff to make a threshold, minimal showing that the potential plaintiffs are similarly situated. *Fravel*, 2008 WL 2704744, at *2 (collecting cases); *see also In re Fedex*, 662 F. Supp. 2d at 1081 (plaintiffs must "demonstrate a reasonable basis for believing that they are similarly situated to potential class members.") (citation and quotations omitted). This step is based upon only the pleadings and any affidavits that have been submitted. *Fravel*, 2008 WL 2704744, at *2 (citing *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003)). In the second inquiry, made at the close of discovery, the Court assesses whether the plaintiffs who opted into the lawsuit are actually similarly situated to the representative plaintiffs. *Boyd v. Jupiter Aluminum Corp.*, 2006 WL 1518987, at *3 (N.D. Ind. May 31, 2006) (citations omitted). Given that the present motion is only for conditional certification, the Court need not venture past step one at this time. *Id*. Here, Plaintiffs' requisite showing is a "modest" one. *Id*.

Plaintiffs have alleged that Non-Recyclable Drivers, who primarily hauled non-recyclable materials within the State of Indiana, were unlawfully denied overtime pay. To bolster this

position, Plaintiffs cite to the affidavit of David Wilbur, a former dispatcher/driver manager of KRD, who testified regarding the various classes of KRD's drivers and KRD's pay practices in Indianapolis. In the Court's view, Mr. Wilbur's affidavit is enough to allow Plaintiffs to move forward.

Accordingly, a more searching analysis assessing issues related to the "similarly situated" requirement is best left for another day. *See Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998) ("Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable a more efficient resolution of the underlying issues in this case.") (citation and quotations omitted); *Austin v. Cuna Mutual Ins. Society*, 232 F.R.D. 601, 606 (W.D. Wis. 2006) (even "the possibility of a fact-intensive inquiry into whether all members of the putative opt-in are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) at the second stage.") (citation and quotations omitted); *see also Herrera v. Unified Management Corp.*, 2000 WL 1220973, at *2 (N.D. Ill. Aug. 18, 2000) (more efficient to prune class members at later stage than to restrict class at start and expand at a later stage).

## C.   Conclusion and scope of collective action

Largely driven by the procedural posture of this case, the Court has resolved to **GRANT** Plaintiffs' Motion for Reconsideration (Dkt. 69) and their underlying Motion for Conditional Certification (Dkt. 19). Following the close of discovery, KRD may seek decertification.

Given the Court's ruling, KRD should submit the following information to Plaintiffs electronically within thirty (30) days of this Order: the names, addresses, telephone numbers,

dates of employment, location of employment, and dates of birth of all potential plaintiffs, which at this time are limited to employees who work/have worked in KRD's Indianapolis operations (on or after January 18, 2007). Courts "have required plaintiffs to offer *admissible* evidence to support their claims that those they wish to represent are similarly situated." *Mares v. Caesars Entertainment, Inc.*, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007) (collecting cases; emphasis added; allowing certification of class limited to location where named plaintiff worked but denying certification of nationwide class).

Specifically, in *Mares*, the district court noted that plaintiffs' request for an expansive collective action as to a company-wide policy was "based upon conversations with others" and a "belief" that similar policies and practices were in effect at other defendant-owned facilities. *Id*. The court deemed this evidence insufficient "to carry the Plaintiffs' modest burden of showing sufficient similarity to *all* members of the broad class they seek to represent." *Id*. Similarly, here, Plaintiffs' request for a nationwide class is based on Mr. Wilbur's conversations with others and his "understanding that KRD pays/paid all of its truck drivers only by the load." As KRD noted in its original sur-reply, Plaintiffs have failed to provide any admissible evidence regarding employees outside of Indiana. The Court agrees. Therefore, the geographic scope of the conditionally-certified collective action must be limited accordingly.

SO ORDERED.

Date: 06/15/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

9

Distribution to:

Emmanuel V.R. Boulukos
ICE MILLER LLP
emmanuel.boulukos@icemiller.com, deborah.smith@icemiller.com

David J. Carr
ICE MILLER LLP
carr@icemiller.com, ross@icemiller.com

Paul Conrad Sweeney
ICE MILLER LLP
paul.sweeney@icemiller.com, mary.unger@icemiller.com

Stephen E. Vander Woude
LANTING PAARLBERG & ASSOCIATES
svanderwoude@lantingpaarlberg.com, svanderwoude@lpalawltd.com

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com